IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CINDY L. HILSGEN,

                     Petitioner,

v.

NANCY HOVE,

                     Respondent.

OPINION & ORDER

18-cv-102-jdp

---

In this habeas corpus action under 28 U.S.C. § 2241, Cindy L. Hilsgen challenges the amount of the bond under which she was held at the Pierce County Jail after she was charged with interference with a child-custody order and contempt of court. The court initially assessed a $50,000 bond that was later reduced to $30,000. Hilsgen argues that either amount is excessive and therefore barred by the Eighth Amendment.

I previously denied respondent's motion to dismiss the case after Hilsgen's friends posted the bond amount and she was released. *See* Dkt. 17 (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 873 (2018) ("In the habeas context, we have held that a person released on bail or on his own recognizance is in custody within the meaning of the statute." (internal quotations omitted))). After confirming that Hilsgen still intended to pursue habeas relief, I set the matter for a telephonic hearing. At a May 11, 2018 hearing, I heard argument from both parties, and I directed respondent to submit a recording of the state circuit court hearing at which Hilsgen's original bond amount was set.

Now respondent has submitted the recording of the bond hearing as well as a second recording, audio of the preliminary hearing at which the court denied Hilsgen's request to reconsider the original $50,000 bond. After considering these recordings, the transcript of the

subsequent hearing at which the bond was reduced to $30,000, and the other evidence the parties have submitted, I will deny Hilsgen's petition because I conclude that the state court did not set her bond in an arbitrary manner.

BACKGROUND

At the February 8, 2018 bond hearing, the assistant district attorney requested a $50,000 cash bond, stating that Hilsgen had a history of failing to comply with court orders or failing to attend hearings. More specifically, the ADA stated that, in conjunction with Hilsgen's then-ongoing divorce proceedings, Hilsgen failed to make her children available to meet with the guardian ad litem three times. Hilsgen failed to appear at an April 28, 2016 hearing in that case, and the court placed the children with the county Department of Human Services. When the department and sheriff arrived at Hilsgen's residence to assume custody over the children, they were gone. Hilsgen was charged with interfering with a child-custody order and with contempt of court for failing to appear at the April 28 hearing.

Hilsgen moved among various locations around the state to avoid arrest on those charges, although she continued to submit correspondence to the court. In August or September 2017, warrants in the criminal case, a separate misdemeanor case, and a criminal traffic case were suspended so that she could attend mediation in an effort to resolve the divorce proceedings, and so that the children could meet with the guardian ad litem, but Hilsgen canceled on the morning of the meeting. While the arrest warrants were suspended, she attempted to either renew or obtain a new passport. She then failed to appear at September 12, 2017 hearings in each of her criminal cases. She was finally arrested in February 2018.

In response to the assistant district attorney's account of events at the bond hearing, Hilsgen stated that she could not afford a $50,000 bond, and that she had kept the children from her husband and avoided court for the safety of her children.

The commissioner set the bond at the $50,000 amount requested by the assistant district attorney, stating that he was doing so because of Hilsgen's repeated failure to comply with court directives or appear for meetings and hearings, and because of the court's "recognition of matters pertaining to the children." The commissioner also set conditions on the bond: if Hilsgen were to be released, she could not contact her minor children or adult children placed with the minors. Hilsgen reiterated that she could not afford the bond and that she had acted for the safety of her children. The commissioner stated, "The only way I can . . . attempt to ensure your attendance at [further] hearings is to require you to post a sufficiently sizeable bond so as to encourage you to attend from now on." Dkt. 30-1 (recording of February 8, 2018 hearing, at 18:13).

The commissioner maintained the $50,000 bond at a February 16, 2018 hearing, at which Hilsgen waived her right to a preliminary hearing. In particular, the commissioner noted that Hilsgen had made previous statements that she did not recognize the authority of the circuit court, which the commissioner thought showed that Hilsgen did not intend to follow court orders.

Hilsgen filed a motion to reduce the bond amount. The judge stated as follows in partially granting Hilsgen's request:

> So it does appear she was disregarding not only the court orders in the family court, but also avoiding service with this warrant for almost two full years. I do note there was been a finding of probable cause on this charge in this case which is a factor that can be considered. I note the nature of the felony charge is intentional withholding the children from the legal custodian. So

again the essence of the charge is an unwillingness to obey orders of the court.

. . .

I do note that it is punishable by 12 years in prison, if convicted, which provides substantial incentive to fail to appear. I note the nature of the charge involves substantial impact on the lives of minor children. That should she be released on bond and she would choose to continue to disobey the orders of the court, it is likely that her failure to appear would impact the lives of young children. She has not demonstrated any willingness to work with the family law court to engage in mediation, work with the guardian ad litem or otherwise get to the bottom of the problems that face this family.

. . .

In terms of looking at the amount of bond right now it is set at $50,000. That does seem to be a very high cash bond. I think it does have to be significant because of substantial likelihood of her refusal to obey court orders and failure to appear and her unwillingness to comply with court orders and impacting vulnerable children. So the bond has to be high enough to assure that if the bond is made there is a strong incentive for her to obey not only appearances but also any restrictions on contact between her and her children, et cetera.

At this point there has not really been any proposal that seems to reasonably suggest something alternative other than a relatively high cash bond to assure her compliance with the court orders. So I will exercise my discretion. I will reduce her bond slightly. I'll set it in the amount of $30,000. I'll add conditions of release.

Dkt 27-1, at 16–18.

## ANALYSIS

As I explained in a previous order, a federal court should exercise discretion when considering a pretrial habeas corpus petition so as to "avoid[ ] interference with the process" of the state courts. *Baldwin v. Lewis*, 442 F.2d 29, 32 (7th Cir. 1971) (quoting *Ex parte Royall*, 117 U.S. 241, 252 (1886)). An excessive-bail claim can be litigated in a habeas action, *see, e.g.,*

*U.S. ex rel. Garcia v. O'Grady*, 812 F.2d 347, 356 (7th Cir. 1987), but it is difficult to win this type of claim: "the federal courts cannot be expected to conduct a *de novo* bond hearing for every habeas corpus case that comes before it." *U.S. ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120, 1133 (7th Cir. 1984). This is not a direct appeal of the bond hearing. The question is whether the state court acted *arbitrarily* in setting bail. *O'Grady*, 812 F.2d at 352; *Fitzgerald*, 747 F.2d at 1134 ("While we may not necessarily agree with the amount of bail set, we will not overrule the state trial court's determination as to the amount of bail unless its decision was made in an arbitrary manner. Here it was not."). "'What the state court did would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation.'" *O'Grady*, 812 F.2d at 352 (quoting *Mastrian v. Hedman*, 326 F.2d 708, 711 (8th Cir. 1964)).

Hilsgen's major argument is that, because of her indigence, she had no way of paying the $50,000 amount originally set or the reduced $30,000 figure. At this point, the case is about the $30,000 revised amount, but I requested the recording of the hearing setting the original amount to ensure that no step of the court's bail-setting analysis was arbitrary.

Nothing in the record gives me reason to doubt that Hilsgen is indigent. And I am well aware of the increased scrutiny that is reasonably being applied to the practice of cash bail for indigent defendants. *See, e.g.*, Bob Egelko and Evan Sernoffsky, *State Supreme Court to review landmark case on money bail system*, S.F. Chron., May 24, 2018, 2018 WLNR 15950387; Alan Feuer, *Judge says N.Y. bail law treats the poor unfairly*, N.Y. Times Serv., Feb. 12, 2018, 2018 WLNR 4459505. But under the controlling law, Hilsgen's financial status alone will not decide this case: "The present financial inability of the petitioner to meet his bail is certainly a consideration and a concern which must be taken into account when determining the

appropriate amount of bail, but it is neither the only nor controlling factor to be considered by the trial court judge in setting bail." *Fitzgerald*, 747 F.2d at 1134; *see also United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988) ("a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement"); *White v. Wilson*, 399 F.2d 596, 598 (9th Cir. 1968) ("The mere fact that petitioner may not have been able to pay the bail does not make it excessive."). Moreover, it is commonplace for others, such as family and friends, to post bond on behalf of the accused, which is what happened here. *See United States v. Szott*, 768 F.2d 159, 160 (7th Cir. 1985) (per curiam) ("The purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee."). Thus I will not grant Hilsgen's petition solely because of her own indigence.

The United States Supreme Court has made clear that the bail or other proposed conditions of release cannot be "'excessive' in light of the perceived evil" the government seeks to prevent, usually the risk that the defendant will not appear at trial. *United States v. Salerno*, 481 U.S. 739, 754 (1987); *see also Stack v. Boyle*, 342 U.S. 1, 5 and n.3 (1951) (bail is not excessive if it is "reasonably calculated" to assure the defendant's presence at trial, taking into account factors such as "the nature and circumstances of the offense charged, the weight of the evidence against him, the financial ability of the defendant to give bail and the character of the defendant" (internal quotation marks omitted)).

I conclude that the records of the three relevant hearings in this case show that the court did not act arbitrarily in setting the bond amount. Rather, the court considered the circumstances leading up to Hilsgen's detention. Most important was Hilsgen's long history of failing to follow the court's directives or appear at hearings and her flight to evade arrest. Both

the commissioner and the judge concluded that Hilsgen's history showed her to be such a flight risk that a large bond amount was necessary. The judge also noted that the 12-year maximum sentence facing Hilsgen on the interference-with-a-custody-order charge was significant enough to worry further about Hilsgen's willingness to appear without the threat of sanction. These are completely reasonable concerns that support a relatively high bond amount.

Hilsgen counters that her bond was set significantly higher than others in Pierce County, including those charged with bail jumping: she submits a document compiling bonds from about 30 other cases, most of which were signature bonds and none of which were more than $10,000. Dkt. 23-8. But Hilsgen does not explain whether this is an exhaustive list of cases, or provide context about the circumstances under which these other defendants received lower bond amounts. Importantly, she does not explain whether any of the defendants in those cases had such long histories of failing to comply with court directives. She only briefly mentions that she believes that the large amount was set as retribution for her attempting to sue the county previously, but she does not develop this argument in any meaningful way. So she has failed to show that there is some reason for the large bond amount other than the court's legitimate concern that she was a substantial flight risk.

As stated above, it is not my role to substitute my own judgment about what bond amount would be the most reasonable. My limited task in this type of case is to determine whether the state court acted in an arbitrary manner. The record shows that it did not, because both the commissioner and judge focused their reasoning on the reasonable goal of ensuring Hilsgen's appearance at future proceedings given her extremely poor track record of complying with court orders. Accordingly, I will deny Hilsgen's petition for a writ of habeas corpus.

Under 28 U.S.C. § 2253, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner in Hilsgen's circumstances. *See Evans v. Circuit Court of Cook Cty., Ill.*, 569 F.3d 665, 666 (7th Cir. 2009). I cannot issue a certificate of appealability unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires her to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). Although the habeas rules allow me to ask the parties to submit arguments about whether a certificate should issue, it is not necessary to do so in this case. For the reasons explained above, I conclude that Hilsgen has not made a showing, substantial or otherwise, that she meets the requirements for a certificate of appealability. Thus, I will not issue her a certificate. She may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Cindy L. Hilsgen's petition for a writ of habeas corpus is DENIED.

2. The clerk of court is directed to enter judgment in favor of respondent and close this case.

3. Hilsgen is DENIED a certificate of appealability.

Entered May 31, 2018.

BY THE COURT:
/s/

_____
JAMES D. PETERSON
District Judge